UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                           CASE NO.  8:24-cr-276-VMC-LSG

MIGUEL ANGEL FORTIER JR.
_____/

DEFENDANT MIGUEL FORTIER'S SENTENCING MEMORANDUM

Defendant Miguel Fortier (Fortier) files this sentencing memorandum for the Court's consideration in the above matter. Fortier is asking the Court to downward depart and/or vary from the final guideline range based on 18 U.S.C. § 3553(a) factors, and others, to achieve a sentence that is "sufficient but not greater than necessary". In addition, Fortier has certain sentencing recommendations he would like the Court to take into consideration.

A sentence outside the guideline range does not require "extraordinary circumstances." *United States v. Gall*, 552 U.S. 38 at 47. Indeed, "[t]here are . . . many instances where the Guidelines range will not yield a reasonable sentence." *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006). As such, "district courts are obligated to impose a reasonable sentence, regardless of the Guidelines range, so long as the Guidelines have been considered." *Id*.; 18 U.S.C. § 3553(a)(4).

Knowing that the Court will thoroughly read the pre-sentence investigation report (PSR) prior to Fortier's sentencing, this memorandum will highlight and expound upon some of those 3553(a) factors.

<u>Variance Based on § 18 U.S.C. 3553(a) Factors</u>

Fortier requests that this Court vary from the applicable guideline range based on the totality of the factors enumerated in § 18 U.S.C. 3553(a).

\*	History and Characteristics of the Defendant

Fortier makes no excuses for the choices he made in life. However, despite having the basic necessities of life, Fortier faced a profoundly difficult upbringing that this Court should consider. Throughout his childhood, he was exposed to serious trauma, including witnessing domestic violence between his mother and her boyfriend, a known drug addict. The environment of instability, substance abuse, and violence left a deep emotional impact on him at a young age, often forcing him to seek refuge at friends' homes or public parks to escape the chaos.

Fortier's education suffered as a result as once could imagine; although he made efforts to attend school, the turmoil in his home life and the dangers he encountered at school—including being robbed without consequence—made it nearly impossible for him to thrive academically. Despite attending three different high schools, the cumulative setbacks and emotional strain ultimately led him to

withdraw. Nevertheless, Fortier has demonstrated resilience and a continued commitment to self-improvement by attempting to complete his GED, successfully passing several portions of the exam. His repeated efforts, despite facing significant obstacles, reflect a desire for a better future and an underlying determination that deserves recognition.

(See Exhibit, letters of support)

* The Need for the Sentence Imposed and Reflection for Seriousness of Offense

It can be reasonably argued that home confinement with location monitoring for three years for a 26- year-old, with no prior criminal convictions, will absolutely reflect the seriousness of the offense, promote respect for the law, and will provide just punishment for the offense. In addition, such a sentence serves as an adequate deterrence to criminal conduct and protects the public from further crimes of the Defendant. Home detention and the rigors of federal supervision are no simple task and the punitive nature of the restriction of movement serves as just punishment for the wrongdoing in this case.

There is no excuse for Fortier's actions, and he offers no legitimate justification for the decisions and errors that led to this offense. He sincerely acknowledges the seriousness of committing fraud and theft against any business

or institution. This was a grave lapse in judgment, and Fortier is deeply remorseful.

Indeed, Fortier has already suffered greatly as a result of this current prosecution. Although the unlawful conduct herein ended years ago, since that time, the protracted investigation and prosecution of this matter has hung over his head like a Damocles sword. Every day since his arrest he has been pained with stress, regret, and the dread of uncertainty, given what he stands to lose.

To his credit, Fortier fully accepted responsibility after federal prosecution about as quickly as one can do and he expresses sincere regret for betraying the public trust. At the same time, it is important to note that this was a non-violent, isolated offense, committed during a time of financial vulnerability and confusion. Fortier poses no danger to the community, and he is committed to making restitution payments in good faith. He remains ready and willing to repay the debt owed and to continue contributing positively to society in any way he can. His remorse is not only spoken—it is reflected in his conduct, his cooperation with the judicial process, and his daily efforts to make things right.

In addition, this Court should take into substantial consideration the escalating costs of incarceration. Every year this figure seems to get larger and larger. As the PSR notes in paragraph 88, it costs taxpayers almost $52,000.00 a

year to incarcerate a federal inmate. Fortier is asking this Court to vary from the guideline range based on this issue and save taxpayers thousand of dollars while still handing out a significant punishment that is indicative of the seriousness of the offense and which will also serve as an adequate deterrence.

Furthermore, incarcerating Fortier would hinder his ability to repay the victims in this matter, defeating the financial accountability objective of sentencing. In contrast, house arrest achieves punitive and supervisory goals at a fraction of the cost and allows the Defendant to make meaningful progress toward financial restitution. See Justice Policy Institute, "The High Cost of Incarceration" (2019). This aligns with 18 U.S.C. § 3553(a)(7), which directs courts to consider the need to provide restitution to victims. Imprisonment for any lengthy period of time in this case would undermine that statutory purpose.

\*      Deterrence, and Protection of the Public from Crimes of the Defendant.

Adequate deterrence is one of the four primary statutory sentencing factors. 18 U.S.C. §3553(a)(2)(b). The National Institute of Justice, a program of the U.S. Department of Justice, publicly announces, however, that sending an offender to prison is not a very effective way to deter crime. In fact, according to NIJ.GOV the certainty of being caught is a vastly more powerful deterrent than the punishment. (See Exhibit: Deterrence Fact Sheet).

General deterrence does not require incarceration. *United States v. Edwards*, 595 F.3d 1004, 1016 (9th Cir. 2010). Indeed, empirical evidence suggests that incarceration does little to deter crime. See National Institute of Justice, U.S. Dep't of Justice, Five Things About Deterrence at 1 (May 2016) ("Sending an individual convicted of a crime to prison isn't a very effective way to deter crime.").

Although "[o]n the day of sentencing, judges frequently tell a convicted defendant that they are being sentenced to prison to 'send a message' that their criminal behavior will not be tolerated . . . the value of this message is often insignificant."[1] Rather, it is the "certainty of apprehension, not the severity of the ensuing legal consequence, [that] is the more effective deterrent."[2]

This is because apprehension is the most immediate and predictable consequence of criminal behavior. The severity of a potential sentence, by contrast, is much more difficult for a would-be offender to estimate. It occurs at the end of a lengthy process wherein any potential punishment might be increased or decreased based on factors that are entirely unknown to the majority of

---

[1] See Long-Term Sentences: Time to reconsider The Scale of Punishment, Marc Mauer, at 123, www.sentencingproject.org.

[2] Daniel S. Nagin, Deterrence in the Twenty-first Century: A Review of the Evidence, at 1 (2013).

potential wrongdoers. See Nagin, supra fn.2 at 10 ("In order for a formal sanction— whether moderate or severe—to be imposed, the offender must first be apprehended, usually by the police. He must next be charged and successfully prosecuted, and finally sentenced by the judge. Successful passage through all of these stages is far from certain."). Consequently, research demonstrates that potential criminals are far more concerned with the likelihood of being caught than what their potential sentence might be.

Adding to that idea, law enforcement and prosecutors successfully deter crime already by increasing the public perception that criminals will be caught and punished – which is certainly the case in large scale theft and fraud investigations as the United States makes it abundantly clear through multiple information and public awareness channels that it is very much involved in the business of prosecuting these cases and seeking restitution. This public campaign for the continued fight on fraud and theft however, poses an odd juxtaposition with those involved in the criminal justice system who now know, that increasing the severity of punishment does little to deter the crime itself.

\*        Home Detention is Appropriate and Incarceration is Not Necessary

Fortier further agues incarceration is not necessary to reflect the seriousness of his criminal conduct, promote respect for the law, or provide just punishment.

18 U.S.C. § 3553(a)(2)(A). Where, as here, "Congress did not set a mandatory minimum," these goals "can be accomplished by a set of other sanctions that do not necessarily include incarceration." *United States v. Walker*, 252 F. Supp. 3d 1269, 1291 (D. Utah 2017). In this matter, home detention also favors private medical care at a doctor of Fortier's choosing and at his expense.

\*      Fortier's Need for Immediate/Future Medical Care

Here, the PSR states that Fortier suffers from multiple chronic and serious health issues that, individually and collectively, create substantial concerns regarding his ability to receive appropriate and timely care in the BOP system. Specifically, Fortier has been diagnosed with a pituitary macroadenoma, a tumor located in his head that, while currently non-life-threatening, requires continual monitoring and treatment with Cabergoline, a specialty medication. Surgical intervention may eventually be necessary. The defendant also experiences gastroesophageal reflux disease (GERD), has documented severe allergies to tree nuts and cat dander requiring an EpiPen at all times to guard against life-threatening anaphylaxis, and suffers from chronic pain and disability associated with surgically-corrected flat foot deformities, including permanent hardware in both feet. (Doc. 77, Ps. 62-65).

Fortier's medical records from Aurora Health Care confirm these diagnoses

and ongoing treatment needs. Recent imaging studies, including a 2024 liver ultrasound revealing a cystic lesion and an MRI of his feet demonstrating ongoing orthopedic complications, further underscore the complexity of his condition.

The Bureau of Prisons' capacity to provide specialized care — particularly for individuals requiring continuous management of rare tumors, access to specific prescription regimens, allergen-controlled environments, and immediate emergency interventions for anaphylaxis — is limited. Numerous reports and judicial findings have recognized that the BOP faces significant challenges in consistently providing adequate health care, especially for inmates with complex or chronic conditions. While each facility offers medical care—often through community providers under contract—staffing shortages remain a persistent issue. A 2024 Office of Inspector General (OIG) report concluded that FMC Devens, for example, had "serious issues" in providing adequate healthcare to inmates. https://www.forbes.com/sites/walterpavlo/2025/03/13/cases-show-medical-care-under-scrutiny-at-federal-bureau-of-prisons/.

Incarcerating Fortier would expose him to significant medical risks, including uncontrolled tumor growth, delayed surgical intervention, poorly managed orthopedic pain, and potentially fatal anaphylactic reactions without immediate medical assistance. Additionally, the stress of incarceration could

exacerbate his GERD and related complications.

USSG 5H1.4, Physical Condition (Policy Statement) states: Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

In certain cases a downward departure may be appropriate to accomplish a specific treatment purpose. See §5C1.1, Application Note 7. The Court may grant a downward departure under U.S.S.G. § 5H1.4 based on a defendant's extraordinary physical impairment. Likewise, pursuant to 18 U.S.C. § 3553(a), the Court should consider the defendant's medical needs and the Bureau of Prisons' (BOP) well-documented limitations in addressing serious and complex health conditions as grounds for a variance.

For these reasons, a downward departure under § 5H1.4, or alternatively, a variance under § 3553(a), is appropriate to avoid a sentence that would constitute unnecessary suffering, serious health deterioration, and exposure to

life-threatening medical emergencies that the BOP cannot safely and consistently manage. A non-custodial sentence, or a significant downward variance, would more appropriately account for the defendant's personal history and characteristics, promote just punishment without undue suffering, and serve the purposes of sentencing in a humane and proportionate manner.

\*      Non-custodial sentences are effective punishment

Federal courts have increasingly recognized the punitive weight and effectiveness of non-custodial sentences. As the Supreme Court observed: "A sentence of probation is not a punishment of no consequence. … [It] may work to restrict the defendant's liberty significantly." *Gall v. United States*, 552 U.S. 38, 48-49 (2007).

While on probation, Fortier would be required to comply with "strict reporting conditions" and would remain under the supervision of a Probation Officer. *Gall*, 374 F. Supp. 2d at 763.  Moreover, Fortier "faces the harsh consequences that await if he violates the conditions of his probationary term." *Id*. Without question, probation would be a "severe punishment, hugely restrictive of liberty, highly effective in the determent of crime and amply retributive." *United States v. Coughlin*, No. CRIM. 06-20005, 2008 WL 313099, at \*5 (W.D. Ark. Feb. 1, 2008) (holding "[n]ot all defendants must be sentenced to imprisonment to be

duly punished.")

Finally, the collateral consequences of a felony conviction will punish Fortier for years to come. These effects "can be devastating. . . . [m]yriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy." *Nesbeth*, 188 F. Supp. 3d at 180. Although the full measure of these collateral consequences cannot be measured, they are punishments all the same.[3]

In sum, Fortier' proposed sentence would help promote respect for the law by demonstrating that a defendant's efforts to redeem himself and become a productive and law-abiding citizen will not go unrecognized.  Fortier' acceptance of responsibility, efforts toward cooperation, and exemplary conduct since this investigation began would serve as a clear example of the importance of giving respect to the law.[4]

---

[3] See id. at 198 ("[T]he collateral consequences a convicted felon must face should be part of a sentencing judge's calculus in arriving at a just punishment."); see also *United States v. Givens*, No. 8:04-CR-478, 2006 WL 3390752, at *5–6 (D. Neb. Nov. 22, 2006) (sentence of home confinement appropriate where defendant "lost his home and business as a result of his conduct," as well as the "embarrassment, loss of reputation, and stigma" that defendant underwent during trial and following his conviction).

[4] See *United States v. Del Campo*, 695 F. App'x 453, 458–59 (11th Cir. 2017) (affirming a non-custodial sentence where the defendant had "no criminal

With humility, Fortier proposes the following reasonable sentence:

\*      A three-year term of home detention with location monitoring, with work release to maintain income for restitution.

\*      A formal restitution payment plan, to begin immediately and continue throughout the supervised release term.

\*      Special conditions including financial disclosures, continued employment, 250 hours of community service, and any medical and therapeutic recommendations of Probation.

Fortier argues the proposed sentence would be "sufficient, but not greater than necessary" to serve the needs of sentencing. 18 U.S.C. § 3553(a); United States v. Tomko, 562 F.3d 558, 563 (3d Cir. 2009) (granting a non-custodial sentence including 250 hours of community service in light of defendant's "negligible criminal history, his record of employment, his support for and ties in the community, and the extensive charitable work he has done.").

Should this Court decide to incarcerate Fortier, he requests self-surrender

---

history whatsoever, [and] whose offenses predated his sentencing by nine years (during which time [the defendant's] record was unblemished)"); *United States v. Pflum*, 556 F. Supp. 2d 1254, 1265 (D. Kan. 2008) ("The seriousness of the offense is not lost in an extended term of probation, particularly when the defendant has already taken such significant and costly strides toward reform.").

given his compliance with all pre-trial conditions of release. He further requests placement at a medical center, or low-security facility, or work camp which offers appropriate medical care.

    WHEREFORE Defendant Fortier requests that this Court take into consideration all of the arguments made herein and for other such relief as this Court deems just and appropriate.

Respectfully Submitted,

S/ Nicholas G. Matassini
Nicholas G. Matassini, Esquire
Florida Bar Number: 737704
ngm@matassinilaw.com
The Matassini Law Firm, P.A.
2811 W. Kennedy Blvd.
Tampa, Florida 33609
(813) 879-6227
Counsel for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, a copy of the foregoing sentencing memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

                                      S/ Nicholas G. Matassini
                                      Nicholas G. Matassini, Esquire
                                      Florida Bar Number: 737704
                                      ngm@matassinilaw.com
                                      The Matassini Law Firm, P.A.
                                      2811 W. Kennedy Blvd.
                                      Tampa, Florida 33609
                                      813-879-6227
                                      Counsel for Defendant